T.C. Memo. 2009-289

UNITED STATES TAX COURT

JEFFREY K. AND KRISTINE K. BERGMANN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20894-05.                    Filed December 16, 2009.

<u>Ronald B. Schrotenboer</u> and <u>Brad Bauer</u>, for petitioners.

<u>Gerald A. Thorpe</u>, for respondent.


MEMORANDUM OPINION

KROUPA, <u>Judge</u>:  This matter is before the Court on
petitioners' motion for summary judgment filed pursuant to Rule
121.[1]  Respondent determined deficiencies in petitioners' Federal

income taxes and accuracy-related penalties under section 6662 for 2001 and 2002. This motion solely concerns the return for 2001 with respect to which respondent determined a $10,521 deficiency and a $79,334 gross valuation misstatement penalty under section 6662(h).

Petitioners ask this Court to grant them summary judgment on two issues. The first is whether, as a matter of law, petitioners filed a "qualified amended return" for 2001 and are therefore not liable for a valuation misstatement penalty under section 6662. The second issue is whether petitioners are not liable for the valuation misstatement penalty as a matter of law on the ground that they may have conceded the deficiency. We will deny petitioners' summary judgment motion for both issues as we do not have enough facts to make a proper determination.

## Background

The following facts have been assumed solely for resolving the pending motion. Petitioner Jeffrey K. Bergmann, a partner at KPMG, engaged in a series of currency options transactions commonly known as Son of BOSS tax shelter transactions[2] in 2000

---

[1]All Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for the year at issue, unless otherwise indicated.

[2]Son of BOSS transactions purport to allow a taxpayer to reduce or eliminate capital gains by creating artificial losses through the transfer of assets laden with significant liabilities
(continued...)

and 2001.  Petitioners claimed $346,609 of ordinary losses and $295,500 of capital losses attributable to these transactions on their return for 2001 (original return).

Respondent began investigating KPMG to determine whether the firm promoted tax shelters to its private clients and partners during the tax year at issue.  Respondent served summonses on KPMG in 2002 requesting documents and testimony relevant to determining KPMG's liability for penalties for promoting abusive tax shelters under section 6700.  The summonses issued to KPMG covered Son of BOSS transactions, but respondent did not then contact petitioners about their claimed losses.

Petitioners subsequently filed an amended Federal tax return for 2001 in March 2004 (amended return).  Petitioners removed the losses attributable to the Son of BOSS transactions on the amended return and reported $205,979 of additional tax. Petitioners specifically stated in the amended return, however, that they are not conceding the correctness of the positions asserted in Notice 2000-44, 2000-2 C.B. 255 and Notice 2002-21, 2002-1 C.B. 730[3] or foreclosing the possibility that they might file another amended return reflecting a different filing

---

[2](...continued)
to a partnership.  See Kligfeld Holdings v. Commissioner, 128 T.C. 192 (2007).

[3]These notices alert taxpayers that losses generated from certain transactions that lack actual economic consequences are not allowable for Federal tax purposes.

position.  Respondent credited the additional tax payment to petitioners' account.

Respondent sent petitioners a letter a year after receiving the amended return, informing petitioners that their return for 2001 was being examined.  Respondent thereafter issued the deficiency notice for 2001 determining the deficiency and the gross valuation misstatement penalty under section 6662(h) with respect to the Son of BOSS transactions they had claimed on their original return.  Respondent did not consider the amended return when determining the penalty amount.  Petitioners timely filed a petition and thereafter filed the motion for summary judgment at issue.

## Discussion

We are asked to decide whether summary judgment is appropriate.  Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials.  See, e.g., FPL Group, Inc. & Subs. v. Commissioner, 116 T.C. 73, 74 (2001).  A motion for summary judgment will be granted if the pleadings, answers to interrogatories, depositions, admissions, and other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law.  See Rule 121(b); Elec. Arts, Inc. v. Commissioner, 118 T.C. 226, 238 (2002).  The moving party has the burden of proving that no genuine issue of

material fact exists and that it is entitled to judgment as a matter of law. See, e.g., Rauenhorst v. Commissioner, 119 T.C. 157, 162 (2002). We grant summary judgment cautiously and sparingly, and only after carefully ascertaining that the moving party has met all requirements for summary adjudication. See Associated Press v. United States, 326 U.S. 1, 6 (1945).

Underpayment of Tax Penalty Under Section 6662

Petitioners move for summary judgment on the issue that they are not liable for an accuracy-related penalty under section 6662 for having an "underpayment."[4] A taxpayer may correct an earlier underpayment by filing a "qualified amended return," which may have the effect of preventing or reducing liability for the accuracy-related penalty by substituting the tax shown on the amended return for the tax shown on the return as originally filed. Sec. 1.6664-2(c)(2), Income Tax Regs. Accordingly, if the amended return for 2001 is a "qualified amended return," then there would be no underpayment of petitioners' tax to which the penalty would apply. Respondent argues that the amended return does not qualify as a "qualified amended return."

A "qualified amended return" is an amended return filed after the due date of the return for the taxable year and before

---

[4]An "underpayment" is the difference between (i) the correct tax, and (ii) the tax shown on the return plus any amount not so shown that was previously assessed (less any rebates). Sec. 6664(a).

the earlier of certain events.  See sec. 1.6664-2(c)(3), Income Tax Regs.  At issue here is whether petitioners filed the amended return before respondent contacted "any person described in section 6700(a)" concerning examination of a section 6700(a) activity from which petitioners directly or indirectly claimed a benefit on the original return.  See sec. 1.6664-2(c)(3)(ii), Income Tax Regs.  If respondent contacted such a person concerning such an activity before petitioners submitted the amended return, then the return would not be a "qualified amended return," and the accuracy-related penalty may still apply.  The parties disagree whether KPMG is a "person described in section 6700(a)."[5]  We now turn to that issue.

"Person Described in Section 6700(a)"

Respondent claims to have contacted a "person described in section 6700(a)" by serving summonses on KPMG.  Petitioners urge this Court to find that KPMG is not a "person" under this section, and thus, the summonses sent to KPMG would not bar their amended return from being a "qualified amended return."

A "person" for section 6700 purposes is one who is involved in promoting tax shelters or similar investment plans or

---

[5]Respondent also argues that even if this Court finds that KPMG is not a "person," it could be proven at trial that Mr. Bergmann and David Greenberg, a former KPMG partner, were constructively contacted when respondent served summonses on KPMG, thereby satisfying the "person described in sec. 6700(a)" requirement.

arrangements and who, in connection with such promotions, knowingly makes or furnishes (or causes others to make or furnish) false or fraudulent statements as to the potential tax benefits or a gross valuation overstatement.  See sec. 6700(a)(2)(A) and (B).  The flush language of section 6700(a) provides that such a person must pay a $1,000 penalty for each described activity.  Petitioners urge this Court to find that KPMG is not a "person described in section 6700(a)" because respondent failed to produce evidence that a penalty was assessed against KPMG with respect to petitioners' Son of BOSS transactions.  Respondent asserts that we should not make a negative inference from his inability to provide evidence on whether KPMG is a "person described in section 6700(a)." Respondent is unable to confirm whether KPMG was assessed a penalty because that information constitutes KPMG's "return information," which respondent is prohibited from disclosing under section 6103.  Nor have petitioners requested this Court to issue an order compelling such information to be disclosed, which is a limited exception to the non-disclosure rule.[6]

We have carefully considered the materials the parties submitted in connection with petitioners' motion for summary

---

[6]We further find that petitioners, not respondent, have the burden to show that no penalty has been assessed against KPMG for the type of transaction petitioners claimed on the original return.

judgment. We are unable to conclude, on the facts presented to the Court at this juncture, whether KPMG qualifies as a "person" under section 6700(a) and thus, whether petitioners' amended return is a "qualified amended return." We find genuine issues of material fact remain concerning this issue. See Sala v. United States, 552 F. Supp. 2d 1167, 1204 (D. Colo. 2008) (the relevant inquiry is whether the third party was contacted regarding the taxpayers' particular transactions). These material facts include those respondent noted in his response to petitioners' reply memorandum. Specifically, factual disputes exist whether KPMG is a "person described in section 6700(a)," and if it is, whether and when respondent first contacted KPMG concerning promotion of tax shelter transactions with respect to which petitioners directly or indirectly claimed tax benefits on the original return. These material facts need to be further developed before the Court can determine whether the amended return is a "qualified amended return." Accordingly, petitioners are not entitled to summary judgment on this issue.[7]

---

[7]Petitioners also argue that they did not take a false or fraudulent position on their return to support their claim of filing a "qualified amended return." We find, however, a trial is necessary to fully consider whether petitioners filed a "qualified amended return." We therefore need not address this issue at this time.

The Valuation Misstatement Penalty of Section 6662

Petitioners also move for a summary judgment that no valuation misstatement penalty applies to them as a matter of law. A taxpayer is liable for an accuracy-related penalty in the amount of 20 percent of any part of an underpayment attributable to a substantial valuation misstatement.[8] See sec. 6662(a) and (b)(3). The Commissioner may increase the penalty to 40 percent where the tax underpayment is attributable to one or more gross valuation misstatements.[9]

Petitioners argue they are entitled to summary judgment and that respondent may not impose the valuation misstatement penalty when the deductions giving rise to the penalty are disallowed in toto. See Keller v. Commissioner, 556 F.3d 1056 (9th Cir. 2009).[10] Petitioners claim that they have conceded the deductions, which are the basis of respondent's determination of a penalty, by filing the amended return. This Court has

---

[8]A "substantial valuation misstatement" occurs if, among other things, the reported value or adjusted basis of property is 200 percent or more of its correct value or adjusted basis. Sec. 6662(e).

[9]A "gross valuation misstatement" occurs if the reported value or adjusted basis of property is 400 percent or more of its correct value or adjusted basis. Sec. 6662(h)

[10]Petitioners were residents of California. We therefore follow precedent from the Court of Appeals for the Ninth Circuit to the extent such precedent is on point. See sec. 7482(b)(1)(A); Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

determined that it will not conduct a trial solely to address the valuation misstatement issue where the taxpayer has conceded the deficiency on other grounds.  See McCrary v. Commissioner, 92 T.C. 827, 854-855 (1989); Schachter v. Commissioner, T.C. Memo. 1994-273.  Accordingly, petitioners assert that a valuation misstatement penalty may not be imposed and that this Court should dispose of the issue on summary judgment.

Respondent counters that petitioners have yet to concede that they are not entitled to the loss deductions attributable to the Son of BOSS transactions.  As noted above, petitioners stated in the amended return that they are not conceding the correctness of the positions taken in the amended return.  We cannot find, therefore, that petitioners have conceded that the transactions lacked economic substance and that no deductions are allowable. Accordingly, we find it premature to rule at this time that the valuation misstatement penalty under section 6662(h) does not apply.

We have considered all arguments the parties made in reaching our holdings, and, to the extent not mentioned, we find them irrelevant or without merit.

To reflect the foregoing,

An appropriate order will

be issued.